CIRCUIT COURT FOR MULTNOMAH COUNTY, FEBRUARY TERM, 1869.

## STATE OF OREGON *v.* JAMES CONALLY.

SELF-DEFENSE.—The law of self-defense does not justify one in following up his adversary after the immediate danger has ceased.

REASONABLE DOUBT——Reasonable doubt defined.

BURDEN OF PROOF.—When the prosecution has established beyond a reasonable doubt that the defendant has killed the person slain, by means of purposely shooting him with a gun, the burden of proof is thrown on the defendant to prove any additional facts that may tend to justify or excuse the killing.

IDEM.—In that case, if the evidence of the prosecution does not show facts or circumstances tending to justify or excuse the act, the burden of proof being thrown upon the defendant, the rule in regard to reasonable doubt does not apply to justification or excuse; but the defendant must show by a preponderance of evidence that the killing was justifiable or excusable.

JUSTIFICATION.—One may use all necessary force to prevent a forcible entry into his house, but he has no right to use unnecessary force; and if he unnecessarily follow and shoot the party, after he has ceased to attempt to enter, the attempt forms no justification.

PREPONDERANCE.—The question whether the killing was necessary in order to prevent a felony, is to be determined by the preponderance of evidence.

REASONABLE DOUBT.—Yet, if the jury, upon the consideration of the whole of the evidence, entertain a reasonable doubt as to whether shooting the deceased was unlawful, they must give the prisoner the benefit of that doubt, and acquit him.

*A. C. Gibbs,* District Attorney.

---

— *Bronaugh, Esq.*, for the defendant.

THE defendant was indicted for the homicide of William R. Hill, and charged with murder in the first degree.

The evidence tended to show that Mrs. Hill, the wife of the deceased, because of a quarrel, or abusive conduct of her husband, had left her own house recently, and gone to the house of the defendant; that not many hours after her doing so, her husband called at the house to see her, and was denied admission, or at least refused permission to take his wife away. This was at an early hour in the evening. That the deceased went away; and one or two hours afterwards returned, and again sought to see his wife. That his manner was violent, and that considerable angry altercation took place between the deceased and the defendant and the defendant's wife. There was some evidence offered tending to show that the deceased attempted to force his way into the house, the door of which was several yards from the sidewalk. Before any shot was fired, the deceased had gone out of the yard on to the sidewalk. It appears that both the defendant and his wife had come out of the house, and that the deceased, while standing on the sidewalk, was fired upon by the defendant and killed; the weapon being a gun that had been brought to the defendant's house within a few days. The shot produced instant death. A revolver was found on the person of the deceased.

Many of the instructions asked on behalf of the defendant are embodied in the general charge. Of those asked on the part of the defendant, the court *declined* to give the following:

"A man has no more right, under the laws of Oregon, to commit an assault and battery upon his own wife than upon any other person.

"If the jury believe that Mrs. Hill, the wife of the deceased, having reasonable ground to apprehend personal violence at the hands of her husband in the nature of cruel beating and whipping, had on the night of the killing sought a temporary refuge from such violence in the house of the prisoner, and that the deceased sought her out and followed

her up, with the apparent design of abusing her by blows, in said house, or of forcing her by violence and against her will, to return to the house of the deceased, then either the prisoner or Mrs. Conally, the wife of the prisoner, had the right to compel deceased to leave the house, and to prevent his return into it while he evidently remained in the same humor.

"That if, after being induced by artifice or force to leave the house of the prisoner, the deceased went away, and procuring a pistol, armed himself with the same, and then returned to the house of the prisoner with the intention or apparent design of effecting an entrance into the house by force, or by intimidating the prisoner and his family, in that case the prisoner had a right to repel force by force even to the extent of taking the life of the deceased, if the conduct of the deceased was such as to give the prisoner reasonable cause to apprehend great bodily harm to himself or his family.

"That a man has by law as good right to defend the person of his wife as his own person from violence at the hands of another; and if the jury believe from the evidence that, at the time of the killing, the prisoner had reasonable cause to believe, and did believe that the person of his wife was in imminent danger of great bodily harm at the hands of deceased, then the prisoner had the undoubted right to slay the deceased in order to ward off the apprehended mischief.

"That in arriving at a conclusion as to whether the prisoner had reasonable grounds for such apprehension, the jury have a right to consider the character of deceased for violence as it may appear from the evidence; also so much of his brutal treatment of his own wife as may be shown by the proof, to have been known to the prisoner; also the acts of deceased and threats made by him against the prisoner within an hour or such matter prior to the killing, as well as the conduct of deceased at the time the shooting occurred."

UPTON, J., at the request of defendant's counsel, reduced the instructions to writing. The charge was as follows:

GENTLEMEN OF THE JURY:—The defendant stands charged with the crime of murder.

The killing of one human being by another may be either murder in the first degree, murder in the second degree, or manslaughter; or the act may be either justifiable or excusable.

When a defendant is indicted for murder in the first degree, the defendant may be found not guilty, or he may be found guilty of manslaughter, or of murder in the second degree, or he may be found guilty of murder in the first degree, according as the evidence shall establish the facts.

It, therefore, is important carefully to examine and consider what is the law in regard to the several degrees of criminality, and as to what constitutes an excuse or a justification, in cases of homicide.

(The court here read from criminal code, ss. 502, 503, 506, 515, 517, 518.)

To prevent the commission of a felony upon the person killing, or upon his wife, parent or child, master or mistress, or servant, is a justification.

A felony is a crime, punishable in the state prison. One has no right to kill his adversary, to prevent a simple assault, or simply to prevent a person from entering his dwelling house, but only when it is necessary to prevent the commission of a felony.

When a person is attacked by an armed man, who seeks to shoot him with a gun or pistol, and the person attacked is not the aggressor, and is not in fault himself, he is not obliged to wait until his adversary has actually aimed his weapon, if the danger is imminent and there is no way to avoid it except by force. But if he follows up his adversary, when his adversary has retired, and when it is not necessary to follow him up, and then shoots him, the fact that the party killed was armed, and even had his pistol drawn, will not be a justification.

The law of self-defense does not justify one in following up his adversary, after the immediate danger has ceased, and then killing him. Such a law would make every man his own avenger.

In a criminal case, a defendant is presumed to be innocent, until the contrary is proven.

Before he can be convicted, his guilt must be established by evidence, beyond a reasonable doubt.

If the jury have a reasonable doubt as to what degree of crime has been established, the defendant is also entitled to the benefit of that doubt, and a defendant should not be convicted of any degree of crime, in regard to the commission of which, the jurors entertain such reasonable doubt.

A reasonable doubt is one that exists in the mind after a full and careful examination and comparison of all the evidence, and one that is consistent with the facts that are fully proved to the satisfaction of the jury. The doubt must not be an unreasonable one, nor a mere supposition inconsistent with the evidence which you credit and believe.

If from the evidence you feel that degree of certainty, in regard to a matter of fact, upon which you would feel safe in acting in your most important undertakings, such matter of fact is established beyond a reasonable doubt, and it is the duty of the jury to act upon such conviction and decide accordingly.

If the killing was not justifiable or excusable it was unlawful, and if it falls below the crime of murder and was yet unlawful, the act was manslaughter.

A bare fear that the deceased was about to commit a felony, will not justify a killing. It must appear that the circumstances were such as to excite the fears of a reasonable man, and that the slayer really and in good faith acted under the influence of those fears and not in a spirit of revenge.

If the prosecution has established beyond a reasonable doubt that the defendant has killed the person slain, by means of purposely shooting him with a gun, the burden of proof is thrown on the defendant, to prove any additional facts or circumstances that may tend to justify or excuse the killing. In that case if the evidence already adduced do not show facts or circumstances tending to justify or excuse the act, the burden of proof being thrown on the defendant, the rule in regard to reasonable doubt does not apply to justification

or excuse, but the defendant must show by a preponderance of evidence, that the killing was justifiable or excusable.

It does not devolve upon the prosecution to show beyond a reasonable doubt that the act was not done in self-defense, if it is proved beyond a reasonable doubt that the killing was done purposely, by shooting with a gun. If the prisoner defends on the ground that the deceased was making an attack on him or his wife, and that there was no other mode of escape, you will decide that matter according to the preponderance of the evidence for or against that position. In such a case the question whether the killing was actually necessary at that time, to prevent a felony, or whether the defendant really believed that the killing was absolutely necessary to prevent the deceased from commiting a felony, is to be determined by the preponderance of evidence.

Human life should be held sacred. That is not a good government where the life of the meanest or worst citizen is not protected by the law with the same certainty and care with that of the best and most reliable citizen. The juror is bound by his duty as well as his oath to see that a defendant is not convicted, unless his guilt is fully established by the evidence; and that same duty and the same oath requires that the life of the citizen, be he high or low, great or small, noble or mean, should be held sacred. If jurors by their verdicts should justify parties taking the life of a bad man without trial, because he is a bad man, it would not only be a violation of law and of an oath, but it would be the beginning of a condition of things the most lamentable that any people can fall into.

It is the duty as well as right of every householder in this State to prevent breaches of the peace in his dwelling; and for the accomplishment of such purpose, such householder has the clear legal right to expel from his house any person guilty of an attempt to commit a breach of the peace therein, and may use all the force necessary to such expulsion. But it is not his right or duty to kill or shoot a man to prevent a breach of the peace, or to prevent a simple assault on himself or his wife or on any other person. When the intruder refuses to leave a man's house, the lawful occu-

pant of the house has a right to take hold on the intruder and put or carry him out, and to call to him as much aid of others to assist in putting him out, as may be necessary; but the refusal to depart, or even the commission of a simple assault, does not authorize shooting the intruder. The deceased had no right to enter the defendant's house, and there beat the deceased's wife; but if he did so, that would not justify Conally in attempting to kill the deceased, unless killing the deceased was then necessary, to prevent the commission of a felony. If Mrs. Hill, the wife of deceased, having reasonable ground to apprehend personal violence at the hands of her husband, sought a temporary refuge in the defendant's house, and the deceased, being forbidden, sought to enter, then either the defendant or his wife had a right to use all necessary force to prevent him from entering. But that gave the defendant no right to use unnecessary force, nor to pursue him after he ceased the attempt to enter, and if the defendant unnecessarily followed Hill, the deceased, and shot him after he had ceased to attempt to enter, the attempt which the deceased made to enter the house, forms no justification of the shooting.

If, after being induced by force or artifice, to leave the house of Mr. Conally, the deceased went away, and procured a pistol, armed himself with the same, and then returned to the house with the intention or apparent design, of effecting an entrance by force, or by intimidating the defendant or his family; in that case, the defendant had a right to repel force by force, even to the extent of taking the life of the deceased; if such force and such taking of life was actually necessary, in order to prevent the deceased from committing a felony, or if the defendant had reasonable cause to apprehend that that was necessary, in order to prevent the deceased from doing great bodily harm to him, or to a member of his family. The jury have a right to consider whatever has been proved in regard to the character of the deceased for violence, and to consider the acts of the deceased, and any threats made by him prior to the killing, as well as the conduct of the deceased at the time the shooting occurred.

Although deceased may not really have intended to shoot Mrs. Conally, yet if his known character, and his acts and conduct at the time, were such as were calculated to excite, in the mind of a reasonable man, and did excite in the mind of the defendant, a reasonable ground of apprehension of such intent, and the belief, that the danger was so pressing and imminent, that the death of his wife could only be avoided by shooting the deceased, the act was justifiable or excusable. This question is to be determined by the jury, by the preponderance of the evidence. Yet if the jury, upon consideration of the whole of the evidence, entertain a reasonable doubt as to whether the shooting the deceased was unlawful, they must give the prisoner the benefit of the doubt, and acquit him.

If the defendant, by his own fault, sought the quarrel, and by his own unlawful acts, produced the necessity above mentioned, he cannot be justified or excused by it.

The right of self-defense, or defense of one's family, or his habitation, does not justify pursuing and killing the intruder or aggressor after he has retreated, and after the necessity has ceased. It is only necessary killing that can be justified by the rules of law, of which I have spoken. If the defendant and his wife were acting in concert, and were mutually following deceased up while he was retreating, and after it had ceased to be necessary for the purpose of preventing Hill, the deceased, from committing a felony, the law of self-defense, or of defense of family, or of habitation, is not applicable. If the defendant unnecessarily pursued the deceased, and sought an opportunity to shoot, and did shoot Hill, the deceased, after all necessity and all immediate danger had ceased, for the purpose of gratifying wrongful feelings, the offense is murder.

There must be some other evidence of malice than the mere proof of the killing, to constitute murder in the first degree, unless the killing was effected in the commission or attempt to commit a felony, and deliberation and premeditation, when necessary to constitute murder in the first degree, shall be evidenced by poisoning, lying in wait, or some other proof that the design was formed and matured in cool blood, and not hastily upon the occasion.

If the jury believe, from the evidence in this case, that there was reasonable ground for the defendant to believe his life in danger, or that he was in danger of great bodily harm from the deceased, and that such danger was imminent, and he so believed, and acting on such belief, killed the deceased, he was excusable.

If the jury believe, from the evidence in this case, that there was reasonable ground for the defendant to believe his wife in danger of great bodily harm from the deceased; that such danger was imminent, and that the killing was necessary, and he did so believe, and acting on such belief killed the deceased, he was excusable.

"A man may repel force by force in defense of his person, habitation or property, against one who manifestly intends by violence or surprise to commit a known felony upon either. In these cases he is not obliged to retreat, but may pursue his adversary till he finds himself out of danger. And if in a conflict between them he happens to kill, such killing is justifiable."

But if he pursue him one step after he finds that he is out of danger, and then kills him for the purpose of gratifying his malice or his passion, it is either murder or manslaughter.

The jury found the defendant guilty of manslaughter, and he was sentenced to the penitentiary for a term of two years.